Richard KRAUSE and B. Jean Krause, Appellants,

v.

MATANUSKA–SUSITNA BOROUGH, Carol Christiansen, Norma Christiansen, Ted Perdue, Jeanette Perdue, Curt Christiansen, and Monique Christiansen, Appellees.

No. S–13068.

Supreme Court of Alaska.

April 23, 2010.

---

**170**

Joe P. Josephson, Josephson & Associates, P.C., Anchorage, for Appellants.

Nicholas Spiropoulos, Palmer, for Appellee Matanuska–Susitna Borough.

Patricia R. Hefferan, Wasilla, for Appellees Carol Christiansen, Norma Christiansen, Ted Perdue, Jeanette Perdue, Curt Christiansen, and Monique Christiansen.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Property owners in the Matanuska–Susitna Borough obtained preliminary approval for a plat after agreeing to certain conditions regarding easements and rights-of-way. They submitted a final version of the plat that did not conform to those conditions, but the Borough Platting Board accepted it for recording. Other owners of property in the same subdivision complained to Borough officials, appealed to the Borough Board of Adjustments and Appeals, and ultimately filed a separate suit in superior court making constitutional and statute-based claims against the Borough and the landowners who submitted the plat. The superior court ruled that the constitutional claims were improper and that the remaining claims were time-barred. We affirm dismissal of the constitutional claims for damages, but we reverse dismissal of the constitutional claims for declaratory relief and the statute-based claims. We remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Richard and B. Jean Krause own real property in the Finger Cove Estates subdivision of the Matanuska–Susitna Borough. The individually named defendants also own property in the subdivision. According to

the Krauses,[1] in late 2000 Carol and Norma Christiansen applied to vacate a platted street and connecting utility and vehicle access easement. The Krauses objected to the application to vacate and presented their position at a public hearing before the Mat–Su Platting Board on December 7, 2000. At the conclusion of the hearing, the Platting Board approved the platting changes requested by the Christiansens, drafted a preliminary plat to reflect this approval, and imposed several conditions regarding easements and rights-of-way to appease the Krauses' concerns. Accordingly, the Krauses withdrew their objection. The Christiansens submitted a final version of the plat that did not satisfy the Platting Board's conditions. It appears that the Krauses received notice on November 13, 2002 that the plat would be accepted for recording, but the final plat was not recorded until November 26, 2002. The differences in the easements and rights-of-way in the final plat made "egress from and ingress to the [Krauses'] residence difficult and dangerous."

The Krauses allege that they discovered on December 10 or 11, 2002 that the plat had been recorded. They met with the Borough Manager and Acting Planning Director to explain their grievances on December 18 and continued to communicate with "various members of Mat–Su Borough government" regarding their objections to the plat throughout February 2003. On March 3, 2003, they received a letter from the Borough Manager stating that review of the platting action was closed. The Krauses requested reconsideration of that conclusion from the Manager ten days later and, after receiving no response, appealed to the Borough Board of Adjustment and Appeals (BOAA) on March 24, 2003. On April 1, 2005, the BOAA ruled that the Borough Manager's letter was not a decision from which it could properly hear an appeal. The BOAA therefore dismissed the Krauses' case. The Krauses then appealed that dismissal order in the superior court. Superior Court Judge Beverly Cutler affirmed on March 12, 2007, ruling that only the BOAA, not the Borough Manager, had authority to hear appeals of platting decisions.[2] The Krauses did not appeal Judge Cutler's ruling.

On April 25, 2007, the Krauses filed a separate complaint in the superior court, alleging some of the facts recited above[3] and naming as defendants the Matanuska–Susitna Borough (the Borough), Carol and Norma Christiansen (the Christiansens), Ted Perdue, Jeanette Perdue, Curt Christiansen, and Monique Christiansen (the individual defendants).[4] The Krauses asserted that they were "entitled to institute this action" by AS 29.40.190,[5] and they made three claims for relief. First, the Krauses claimed that the actions of the Christiansens and the Borough "violated [Matanuska–Susitna Borough Ordinance (MSB)] 16.10.060(F), which requires that all conditions of approval be met before a final plat is submitted for recording, and MSB 16.15.051(A), which requires that a final plat be submitted in conformance with the preliminary plat as approved."[6] Second, the Krauses claimed that "[b]y its singular treatment" of the Krauses and the Christiansens,

1. Because the superior court granted a motion to dismiss the Krauses' complaint, we accept all factual allegations in the complaint as true. *See Catholic Bishop of N. Alaska v. John Does 1–6*, 141 P.3d 719, 722 (Alaska 2006) (citing *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000)).

2. Matanuska–Susitna Borough Ordinance 15.39.030(A) grants the BOAA authority to hear appeals from decisions of the Platting Board.

3. The Krauses' complaint did not include information regarding their communications with the Borough Manager and other Borough officials or their prior appeals to the BOAA and superior court.

4. Although, as described below, the Krauses complain only of actions taken by the Borough and Carol and Norma Christiansen, they apparently included the other four individual defendants because they "own their respective described properties as grantees from [the Christiansens]" and their properties abut the Krauses' property.

5. AS 29.40.190 provides, in relevant part, that "an aggrieved person may institute a civil action against a person who violates a provision of this chapter, a subdivision regulation adopted under this chapter, or a term, condition, or limitation imposed by a platting authority."

6. We refer to these claims and the Krauses' reliance on AS 29.40.190 as the "statute-based claims."

the Borough deprived the Krauses of their right to equal protection. Third, the Krauses claimed that the Borough violated their right to due process by (1) not requiring the Christiansens to request, and thus participate in, a hearing regarding their "proposed material changes to the approved preliminary plat"; (2) not requiring the Christiansens to submit and have a hearing regarding "a new petition for a preliminary plat"; (3) "depriving the plaintiffs of their legitimate interests in property as well as of their use of a platted subdivision street and related public use easement which were improperly vacated and transferred to private ownership." The Krauses sought declaratory judgment that the final plat was "not lawfully approved or adopted," was "at variance with the preliminary plat," and "is void and without force or effect." They also sought compensatory damages from the Borough and compensatory damages and statutory penalties from the Christiansens. The Krauses requested "entry of a permanent order and decree" restoring the status quo as it existed before the Christiansens modified the plat and directing the defendants not to interfere with the Krauses' use and enjoyment of their easements and rights-of-way.

On July 5, 2007, the Borough filed a motion to dismiss under Alaska Civil Rule 12(b)(6).[7] The Borough argued that the Krauses' constitutional claims lacked merit because "[t]he Alaska Supreme Court has never recognized a direct constitutional cause of action against a municipality." Citing *Lowell v. Hayes*,[8] the Borough argued that this dispute did not merit the creation of such a cause of action because the Krauses had an alternative statutory remedy under which they also requested relief.[9] And the Borough argued that "the statutory limitation imposed by the Alaska Legislature for this

entire action has run" because the applicable statute of limitations for the AS 29.40.190 claim, set by AS 09.10.070, is two years. The Borough observed that because the Krauses' complaint alleged that the final plat made it dangerous to enter and exit their residence and included no allegations that the danger was generated by anything other than the recording of the plat in November 2002, the cause of action accrued more than two years before the complaint was filed.

The Krauses opposed the motion to dismiss. They argued that the approval of the final plat is a "continuing violation" under AS 29.40.190(b), so the two-year limitation period in AS 09.10.070 did not bar their claims. Second, they argued that because their claims involve real property, other statutes of limitations—ten years under AS 09.10.030 or AS 09.10.100, or six years under AS 09.10.050—apply. Regarding the constitutional claims, the Krauses argued that this court had "neither adopted nor rejected" the doctrine the United States Supreme Court created in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[10] which permits, under some circumstances, rights of action for damages arising from constitutional violations by government agents.[11]

Superior Court Judge Vanessa White dismissed the Krauses' suit. The court first disposed of the Krauses' equal protection and due process claims. Relying on *Lowell*, the court ruled that "[t]he Borough correctly asserts that the plaintiffs may not make a claim for infringement of a constitutional right as long as alternative statutory remedies exist," and the Krauses "acknowledge they have a cause of action for damages associated with the alleged violations of the Borough ordinances, as well as a statutory remedy under

---

**7.** The individual defendants did not oppose the Borough's motion. Their answer to the complaint included the affirmative defense that the complaint failed to state a claim on which relief could be granted.

**8.** 117 P.3d 745 (Alaska 2005).

**9.** The Borough also contended that the Krauses had an additional alternative remedy under 42 U.S.C. § 1983, "which allows any plaintiff to

obtain relief from governmental wrongs denying due process or equal protection."

**10.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**11.** The Krauses also seemed to argue that the court could not appropriately determine that "remedies under 42 U.S.C. sec. 1983 are available and adequate."

AS 29.40.190." [12] The court ruled that the Krauses' remaining claims are time-barred for three reasons. First, the court reasoned that the claims under Borough ordinances are subject to the two-year limitation of AS 09.10.070, which governs causes of action "for … injury to the rights of another not arising on contract and not specifically provided otherwise." Second, the court ruled that the two-year statute of limitations period in AS 09.10.070 barred claims against the Christiansens for compensatory damages and injunctive relief. [13] Third, the court ruled that the one-year statute of limitations period in AS 09.10.090 prevented the Krauses from bringing a claim for statutory penalties. The court rejected the Krauses' argument that they were subject to a continuing violation, reasoning that the Krauses' claims accrued "at the time the Borough platting authority approved the proposed final plat without the easement plaintiffs expected" even though the injury was ongoing. The court noted that the Krauses had not made allegations suggesting that the accrual was delayed by late discovery of the change to the plat and specified that this claim was dismissed without prejudice, so if the Krauses could "assert facts which would toll the two year statute of limitations," the court would consider a motion to amend the complaint. The court rejected the contention that longer limitations periods in AS 09.10.030 (governing recovery of real property), AS 09.10.100 (the "catch-all" statute of limitations) or AS 09.10.050 (for trespass and waste) applied to the Krauses' claims.

On December 17, the Krauses requested leave to amend their complaint. They asserted that the statute of limitations period for their statutory claims was equitably tolled by their "administrative appeal," which the superior court did not resolve until March 2007. Equitable tolling applied, they argued, because they pursued a remedy in another forum, thereby indicating to the defendants that they were contesting the plat. The Krauses submitted an affidavit describing the history of their actions after the plat was recorded, including their communications with Borough officials and the BOAA appeal. They also lodged an amended complaint, which contained a new paragraph asserting that:

> [t]hroughout a lengthy, multi-year, period, the plaintiffs attempted to negotiate with the defendants in good faith, pursuing remedies through mediation, as well as in a quasi-judicial forum (the [BOAA]), and in a judicial forum (an appeal taken to the superior court from the decision of the [BOAA] that it lacked jurisdiction to address the issues raised by the plaintiffs).

The Borough opposed the Krauses' motion to amend, offering four reasons the elements of equitable tolling were not met: (1) the Krauses' previous case was an appeal of the Borough Manager's letter rather than an appeal of the approval of the plat; (2) collateral estoppel bars the Krauses from arguing that the Borough Manager is a judicial or quasi-judicial forum, and, in the alternative, the Borough Manager is not such a forum; (3) the Krauses' administrative appeal of the BOAA decision (assigned to Judge Cutler) did not put the Borough or the individual defendants on notice of all of the claims asserted in the second superior court case; and (4) the Krauses' initial attempt to secure a remedy via private meetings with the Borough Manager was not a reasonable way to pursue a legal claim. The Borough attached four documents from the BOAA appeal to its opposition: the Borough's motion to dismiss the BOAA appeal, the Krauses' opposition to that motion, the Borough's reply, and Judge Cutler's decision on appeal.

The individual defendants also opposed the Krauses' motion to amend. They argued that the Krauses should have made an equitable tolling argument before Judge White ruled on the motion to dismiss and that leave to amend is not permitted "when the purpose is to reargue what has been decided." They also denied that they were involved "in any

---

**12.** The court ruled that AS 29.40.190(a) only permits civil actions against individuals, not "a governmental entity such as the Borough."

**13.** The court noted that even if the Krauses could properly convert their claim into an action under 42 U.S.C. § 1983, it "still would be time barred under the two-year 'personal injury' statute of limitations codified at AS 09.10.070(a)(2)."

proceedings with respect to their property" between the filing of the plat in November 2002 and the filing of the current suit in 2007.

The Krauses replied that the Borough had notice the Krauses were prepared to litigate regarding the plat, that granting leave to amend the complaint would not cause prejudice to the Borough, that they acted reasonably and in good faith by trying to negotiate and then actively litigating their case, that collateral estoppel did not bar them from bringing the claims in their amended complaint, and that the Borough should be equitably estopped from relying on the statute of limitations.

In an order issued February 12, 2008, Judge White denied the Krauses' motion to amend their complaint. The court wrote that there were "two strong bases for denying Plaintiffs' requests: (1) Plaintiffs may not argue that pursuit of negotiations with the Borough Manager constitutes an effort to seek relief in a quasi-judicial forum, and (2) Plaintiffs' attempt to seek quasi-judicial relief through the BOAA also was untimely."

The Krauses filed a motion for reconsideration, which the court denied. Judge White concluded that "the elements needed to satisfy equitable tolling are not met" because (1) "the Borough Manager is not a quasi-judicial forum"; (2) the prior case did not put the Borough on notice "of the claims and remedies sought here"; and (3) the Krauses "have never alleged how the other defendants were placed on notice of any claims whatsoever."

The Krauses appeal the dismissal of their complaint as well as the denials of their motions for leave to amend and for reconsideration.

## III. STANDARD OF REVIEW

■ We review questions of law with independent judgment.[14]

■ We also review with independent judgment which statute of limitations applies to a claim.[15]

■ The decisions of trial courts regarding motions to dismiss involve legal issues which we review de novo.[16] To survive a motion to dismiss filed under Alaska Civil Rule 12, "it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[17] This lenient standard means that "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient."[18] We "must presume all factual allegations of the complaint to be true and [make] all reasonable inferences ... in favor of the non-moving party."[19]

■ We review a superior court's denial of a motion to amend a complaint for abuse of discretion.[20] It is within a trial court's discretion to deny such a motion where amendment would be futile because it "advances a claim or defense that is legally insufficient on its face."[21] We use our inde-

14. *Jacob v. State, Dep't of Health & Soc. Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)) (citing *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003)).

15. *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006) (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 140 (Alaska 2004)).

16. *Catholic Bishop of N. Alaska v. John Does 1–6*, 141 P.3d 719, 722 (Alaska 2006) (citing *Nunez v. Am. Seafoods*, 52 P.3d 720, 721(Alaska 2002); *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000)).

17. *Carlson v. Renkes*, 113 P.3d 638, 641 (Alaska 2005) (quoting *Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999)) (internal quotation marks omitted).

18. *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1014 (Alaska 1999) (quoting *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988)) (internal quotation marks omitted).

19. *Id.* (quoting *Kollodge*, 757 P.2d at 1026) (alterations in original) (internal quotation marks omitted).

20. *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004) (citing *Bauman v. Day*, 942 P.2d 1130, 1132 (Alaska 1997)).

21. *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004) (quoting *Taylor v. Johnston*, 985 P.2d 460, 464 (Alaska 1999)).

pendent judgment to review a conclusion that an amendment meets that description.[22]

## IV. DISCUSSION

### A. The Krauses' Constitutional Claims for Money Damages Were Properly Dismissed, but Their Requests for Declaratory and Injunctive Relief Based on Those Claims Were Not.

We reiterated in *Lowell v. Hayes* that "we will not allow a constitutional claim for damages, 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.'"[23] The Krauses argue that *Lowell* does not control their case because the Borough and the individual defendants did not show that the Krauses had alternative remedies. They contend that they do not have alternative statutory remedies if their potential statutory claims are time-barred, and they assert "that the case at bar is a good opportunity for the Supreme Court of Alaska to recognize *Bivens*-type claims."

Contrary to the Krauses' assertion, the procedural unavailability of alternative remedies does not negate the existence of those remedies. As we wrote in *Lowell:*

> Surely the inadequacy of alternative remedies for alleged constitutional violations cannot be measured *per se* by the dismissal or defeat of those remedies. If that were so, the perverse result would be that the more frivolous or unjustifiable a claim, the more it would merit an implied constitutional cause of action for damages.[24]

The Krauses could, and did, bring other claims under AS 29.40.190 and Borough ordinances. Thus, the narrow circumstances described in *Lowell*—"flagrant constitutional violations where little or no alternative remedies are available"—do not exist here.[25] We therefore affirm the superior court's ruling dismissing the Krauses' constitutional claims for damages.

But we reverse the superior court's ruling as it relates to the Krauses' constitutional claims for declaratory and injunctive relief. We have held that although damages are not available, declaratory or injunctive relief is "traditional" and "particularly appropriate"[26] with respect to unconstitutional statutes. We believe the same rule should apply here. The Krauses are not entitled to money damages for the alleged violations of their constitutional rights, but they may seek declaratory and injunctive relief.

### B. The Krauses May Pursue Their Statute–Based Claims.

#### 1. The two-year limitation of AS 09.10.070 and the one-year limitation of AS 09.10.090 apply to this action.

The Krauses argue that their claims relate to "interests in real property" and contend that any of the three statutes of limitations provided by AS 09.10.030 (actions regarding interests in land), AS 09.10.050 (actions for "waste or trespass upon real property"), or AS 09.10.100 (actions "not otherwise provided for") should apply.

We conclude that AS 09.10.070 and AS 09.10.090 are the controlling statutes here. The Krauses request relief for injury arising from the inappropriate recording of a plat; nearly all of their claims are properly described as claims "for personal injury ... or injury to the rights of another not arising on contract and not specifically provided otherwise."[27] Alaska Statute 09.10.070(a)(5) spe-

---

**22.** *See Hallam*, 91 P.3d at 287–88; *Taylor*, 985 P.2d at 464–66.

**23.** *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005) (quoting *Dick Fischer Dev. No. 2 v. Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992)).

**24.** *Id.* at 754.

**25.** The Krauses also make an argument regarding whether the superior court could have properly found that the alleged constitutional violations were not flagrant. Because the availability

of an alternative remedy disposes of the damages claims, we need not consider that issue.

**26.** *Robison v. Francis*, 777 P.2d 202, 204 & n. 3 (Alaska 1989).

**27.** AS 09.10.070(a) ("Except as otherwise provided by law, a person may not bring an action ... (2) for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise ... unless the action is commenced within two years of the accrual of the cause of action.").

cifically exempts statutory penalties, which are instead governed by AS 09.10.090,[28] so the Krauses' request for statutory penalties falls under that statute. The Krauses are not seeking the recovery of real property, so the limitations period in AS 09.10.030 does not apply. And the Krauses' cause of action is not based on trespass or waste, so AS 09.10.050 does not apply. Alaska Statute 09.10.100 governs only claims for which no other statute of limitation controls; it does not apply here because we conclude that other statutes provide time limitations for the Krauses' claims.

Significantly more than two years passed between the recording of the plat in November 2002 and the filing of the complaint in April 2007. Based on the allegations set forth in the complaint, the superior court's initial ruling dismissing these claims as untimely was correct.

### 2. The Krauses were not subject to a continuing violation.

■ The Krauses argue that the applicable limitations period was tolled because the action complained of constitutes a continuing violation.[29]

■ We review the legal question of what constitutes a continuing violation de novo.[30]

We have explained that "[t]he continuing violations doctrine allows plaintiffs to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period."[31] Here, because no action occurred after the plat was recorded, the continuing violations doctrine does not apply. We also note that though the continuing violations doctrine prevents claims that initially accrued outside the relevant limitations period from being time-barred, it only permits plaintiffs to collect damages caused by acts that occurred within the limitations period.[32] Even if the law permitted the Krauses to rely on this doctrine, they would not be able to recover the full remedy they seek.

### 3. It was error to deny the Krauses' motion for leave to amend their complaint.

■ Alaska Civil Rule 15(a) provides that a party seeking leave to amend a complaint to which a responsive pleading has been filed must receive permission from the court. Leave "shall be freely given when justice so requires."[33] But we have held that if an amendment would be futile because it "advances a claim or defense that is legally insufficient on its face," it is appropriate for a

---

28. See AS 09.10.090 ("A person may not bring an action upon a statute for the penalty given in whole or in part to the person who will prosecute for the same unless the action is commenced within one year after the commission of the offense.").

29. The Krauses also argue that AS 29.40.190(b) expresses a policy of liberally treating the acts alleged in claims made under that statute as continuing wrongs because it provides that "[e]ach day that an unlawful act or condition continues constitutes a separate violation." But that provision is intended to provide a way to calculate penalties described in subsection (a); it does not create a special tolling rule.

30. Cf. In re Adoption of Erin G., 140 P.3d 886, 888 (Alaska 2006) (citing State v. Dupier, 118 P.3d 1039, 1044 (Alaska 2005)).

31. Reich v. Cominco Alaska, Inc., 56 P.3d 18, 25–26 (Alaska 2002) ("The continuing violations doctrine allows a plaintiff to establish the elements of a hostile work environment claim by relying on incidents that predate the statutory limitations

period to prove that a hostile environment continued into the limitations period.").

32. Oaksmith v. Brusich, 774 P.2d 191, 200 n. 10 (Alaska 1989) ("Under theories of continuing trespass or nuisance, each harmful act constitutes a new cause of action for statute of limitations purposes and, therefore, the accrual of a cause of action is not measured from the date of the initial trespass so as to bar the entire action. However, while later continuing acts may prevent the running of the statute of limitations on the claim, damages cannot be recovered for the initial time-barred acts.") (internal citations omitted).

33. Alaska R. Civ. P. 15(a). See also Ruckle v. Anchorage Sch. Dist., 85 P.3d 1030, 1039 (Alaska 2004) ("[W]e have long held that leave to amend a pleading should be freely given and that, absent a showing that the amendment would have resulted in injustice, a trial court will be found to have abused its discretion in denying a motion to amend." (citing Estate of Thompson v. Mercedes–Benz, Inc., 514 P.2d 1269, 1271 (Alaska 1973))).

superior court to deny leave to amend.[34]

■ We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend.[35]

As presented in their complaint, the Krauses' claims were time-barred; their amended complaint could only make out a viable claim if it sufficiently supported an argument that the applicable statute of limitations was tolled. The Krauses argue that they should have been granted leave to amend their complaint because "[t]he equitable tolling doctrine should have been recognized and applied, or at a minimum, the superior court should have conducted an evidentiary hearing at which testimony pertinent to the tolling issue could have been received," and because the defendants should be equitably estopped from asserting the statute of limitations as a defense.

a. **Drawing factual inferences in the Krauses' favor, the doctrine of equitable tolling may apply to their claims.**

We have explained the circumstances under which a statute of limitations period may be equitably tolled:

> The equitable tolling doctrine applies to relieve a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him. The statute is equitably tolled if (1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to

gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith. The statute is tolled only when the initial remedy is pursued in a judicial or quasi-judicial forum.[36]

We consider each requirement in turn.

i. **The Krauses sufficiently allege that the defendants had notice of their claims.**

■ The Borough and the individual defendants argue that the Krauses fail to satisfy the notice requirement for equitable tolling. We are not persuaded by their reasoning.

The Borough argues that it was not on notice of the claims in the Krauses' complaint because the claims in this case are distinct from those the Krauses made in their prior case. Specifically, the Borough argues that the Krauses' appeal to the BOAA included neither a demand for damages nor an argument regarding a change to an easement. The Borough also asserts the case was not an appeal of the approval of the plat. But equitable tolling does not require that the initial and current relief sought be identical.[37] The Krauses' two cases are based on the same underlying facts and issues, all of which involve the Borough's approval of the Christiansens' plat. Moreover, the Krauses' claims for declaratory and injunctive relief against the Borough are very similar to claims they raised in unsuccessful efforts to obtain relief elsewhere. We conclude that the differences between this case and the prior one are not sufficient to defeat the notice requirement of the equitable tolling doctrine.

---

**34.** *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004) (quoting *Taylor v. Johnston*, 985 P.2d 460, 464 (Alaska 1999)).

**35.** *See Hallam*, 91 P.3d at 283, 287–88 (affirming denial of leave to amend as not an abuse of discretion because the claims in the amended complaint were preempted by federal law); *Taylor*, 985 P.2d at 464–66 (affirming denial of leave to amend as not an abuse of discretion where we determined that plaintiff could not make out a tort claim).

**36.** *Smith v. Thompson*, 923 P.2d 101, 105 (Alaska 1996) (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989)).

**37.** *See Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 142 (Alaska 2008) (citing with approval a case in which the Ninth Circuit "concluded that litigants need not seek the same remedies before both forums in order for equitable tolling to apply") (citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1133, 1141 (9th Cir.2001)); *cf. Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 885 (Alaska 2006) ("Where a claim with essentially the same facts is being litigated ... in the federal courts between the same parties, the defendant cannot claim not to be on notice [for purposes of equitable tolling].").

The individual defendants reason that they were not on notice of the prior case because they were not parties to it. This argument cannot defeat the motion to amend because when considering whether an amendment is futile, our court "must presume all factual allegations of the complaint to be true and [make] all reasonable inferences ... in favor of the non-moving party."[38] The Krauses alleged in their amended complaint that they "attempted to negotiate with the defendants." We must read the complaint as alleging that all of the defendants, including the individual property owners, were engaged in negotiations and were aware of the pending case before the BOAA. Because the complaint allows the inference that the Krauses gave notice to all of the defendants, the law requires that the Krauses be given the chance to prove this allegation.[39]

### ii. There is no indication that delay has prejudiced the defendants such that the Krauses' claims cannot be equitably tolled.

No party argues that the delay in filing the current case prejudiced any of the defendants. Therefore, we must assume for purposes of reviewing dismissal of the complaint and denial of the motion to amend the complaint that the Krauses could meet the second requirement for equitable tolling.

### iii. The defendants did not show that the Krauses failed to act reasonably and in good faith.

The Borough argues that the Krauses' initial pursuit of an alternative remedy was not reasonable. Specifically, the Borough contends that by approaching non-judi-

cial Borough officials, the Krauses attempted to "influence the outcome of a judicial determination by involving the legislative and executive branches of government." The Krauses contend that they "acted in good faith."

After the Krauses learned that the final plat had been recorded without the conditions they had insisted upon, the Krauses contacted the Borough Manager and other members of the executive branch about their concerns.[40] The Krauses met with the Borough Manager on December 18, 2002 to voice their objections to the recorded plat. In response to their complaints, the Borough Manager told them he would have the Acting Planning Director, Ron Swanson, look into their concerns. Swanson promptly met with them and requested additional documents, which they provided. The Krauses believed that the investigation was ongoing until they received a letter from Borough Manager Duffy dated March 3, 2003, stating that the plat met all of the conditions required for Platting Board approval and declaring the "administrative review of this platting action is closed."

Jean Krause addressed the Borough Assembly the next day. The joint affidavit the Krauses filed in support of their motion to amend states that Mayor Tim Anderson and Assembly Member Talis Colberg heard Ms. Krause's presentation and stated that they wanted to meet with the Krauses to discuss their concerns. On March 6, 2003, the Krauses met with the Mayor, the Borough Manager, Mr. Swanson, Mr. Colberg and the Deputy Borough Attorney. According to the Krauses, the Borough representatives proposed negotiations, and the Krauses agreed to participate. On March 13, 2003, the

---

38. *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1014 (Alaska 1999) (quoting *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988)) (alterations in original).

39. We note that the record on appeal includes correspondence from the Christiansens dated August 28, 2003 and March 2, 2005 reflecting their awareness of the Krauses' attempts to get relief from the Borough and from the BOAA. It also includes correspondence from the Perdues dated November 12, 2003 reflecting their awareness of "upcoming mediations" and purporting to grant

to the Christiansens the right to make decisions regarding the Perdues' property.

40. We do not believe this was unreasonable. As Judge Cutler noted, once the plat had been recorded, the Borough had authority to petition the platting authority to alter the plat. AS 29.40.120 provides in relevant part: "A recorded plat may not be altered or replatted except by the platting authority on petition of the state, the borough, a public utility, or the owners of a majority of the land affected by the alteration or replat."

Krauses wrote two letters. The first asked Borough Manager Duffy to reconsider his March 3, 2003, decision to close the administrative review of their concerns. The Krauses never received a response to this request. In the second letter, the Krauses reiterated their willingness to engage in negotiations with the Borough.

The Krauses appealed the Borough Manager's decision to the BOAA on March 24, 2003, but the Krauses and the Borough both requested stays of that appeal so they could continue with their negotiation, mediation, and settlement efforts. On July 3, 2003, the Borough and the Krauses signed a negotiated settlement agreement. According to the Krauses, that agreement "fell through" when the Christiansens objected to some of its terms, calling it a "bogus settlement agreement" and declaring, "[t]his settlement has been stopped as of now" in correspondence directed to the Platting Board dated on or about September 17, 2003.

Despite the Christiansen's rejection of the settlement agreement, the Krauses wrote Borough Manager Duffy about the Borough's failure to fulfill its obligations under that agreement. He offered the Krauses two options: proceed with the BOAA hearing or attempt mediation. On November 13, 2003, the Krauses, the Christiansens and the Borough all signed an agreement to mediate. The mediation continued through January 2004 and culminated in a second settlement agreement but the parties again encountered difficulty when they attempted to execute it, and further mediation efforts reached an impasse. The BOAA entered its decision on April 1, 2005, concluding that it lacked jurisdiction to hear the Krauses' appeal of the Borough Manager's letter. The Krauses appealed the BOAA's decision to the superior court on April 27, 2005, and the superior court affirmed the BOAA's decision on March 12, 2007.

On this record, we cannot conclude that the Krauses acted inappropriately or in bad faith by contacting local officials or accepting offers to negotiate and mediate this dispute. Furthermore, though the BOAA dismissed the Krauses' appeal on jurisdictional grounds and Judge Cutler affirmed that decision, there was no suggestion in either opinion that the Krauses' arguments were frivolous or malicious.[41]

### iv. The Krauses made the necessary showing of pursing relief in a quasi-judicial forum.

The fourth requirement for equitable tolling is that the plaintiff initially sought relief in a judicial or quasi-judicial governmental forum.[42] Judge White concluded that the Krauses' claims were time-barred for two reasons relating to this factor. First, Judge White seems to have agreed with the Borough's argument that collateral estoppel bars the Krauses from asserting that the Borough Manager is a quasi-judicial forum.[43] The Borough's collateral estoppel argument stems from Judge Cutler's decision denying the Krauses' BOAA appeal. In order to establish an issue, the doctrine of collateral estoppel requires that the parties and the issues litigated in the second action to be identical to those involved in the first action.[44] Judge Cutler's decision did not address the equitable tolling doctrine; it considered whether the BOAA had jurisdiction over an appeal of the Borough Manager's letter, and concluded that it did not. The decision does observe that the Borough Manager has no authority to act as a judge or quasi-judicial officer, but those observations support Judge Cutler's conclusion that the Borough Manager's letter was not an appealable order; she did not decide whether the

---

**41.** *Cf. Solomon,* 140 P.3d at 885.

**42.** *See id.* at 884 ("[T]he statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum." (quoting *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 768 (Alaska 1987))).

**43.** The court's order denying the Krauses leave to amend their complaint stated that the Kraus-

es, "*may not argue* that pursuit of negotiations with the Borough Manager constitutes an effort to seek relief in a quasi-judicial forum." (emphasis added).

**44.** *Smith v. Stafford,* 189 P.3d 1065, 1075 (Alaska 2008) (quoting *McElroy v. Kennedy,* 74 P.3d 903, 907 (Alaska 2003)).

Borough Manager was a "quasi-judicial forum" for equitable tolling purposes.

The issue to be decided in the second action—whether the Borough Manager is a quasi-judicial forum for purposes of equitable tolling—is different than the issue in the first action—whether the BOAA had jurisdiction to hear an appeal from the Borough Manager's letter. Therefore, the Borough's collateral estoppel argument is unavailing.

Judge White's second reason for denying the Krauses' motion to amend was that their "attempt to seek quasi-judicial relief through the BOAA ... was untimely." The court did not elaborate on this reason, and we believe it is susceptible to two meanings. First, the Borough and the individual defendants argued in the superior court that the Krauses waived their equitable tolling argument by failing to raise it in response to the motion to dismiss their complaint. If the court's reference to "timeliness" referred to the argument that the Krauses should have raised the doctrine of equitable tolling when the motion to dismiss was being decided, it overlooks that the court's order stated, "[i]f Plaintiffs can assert facts which would toll the two-year statute of limitations, the court will consider a motion to amend Plaintiff's complaint."

The other possible interpretation of Judge White's order is that the reference to "timeliness" reflects the court's conclusion that the Krauses could not rely on the doctrine of equitable tolling because they did not file their BOAA appeal within fifteen days from the date they learned of the Platting Board's decision.[45] If this was the court's reasoning, it reflects a misapplication of the equitable tolling doctrine. Equitable tolling is avail-able in situations where plaintiffs have multiple legal remedies available to them.[46] Rather than require a plaintiff to simultaneously pursue separate remedies, this doctrine tolls the statute of limitations on one remedy while the plaintiff pursues an alternate remedy.[47] If the plaintiff's first attempt to obtain relief fails, the plaintiff can pursue the other remedy based on the same right or claim.[48] The statute of limitations is thus tolled during the pendency of the initial defective action. A plaintiff's second action is certainly timely when, as in this case, it is filed before the un-tolled time exceeds the applicable statute of limitations period.[49]

The Krauses' equitable tolling argument does not depend upon whether their appeal to the BOAA was timely filed or successful. The issue is whether the Krauses' efforts to obtain relief from the BOAA tolled the one-year or two-year limitation periods for the claims in their amended complaint. As already explained, we believe the Krauses' amended complaint alleges facts that, if proven, satisfy the first three elements of the equitable tolling doctrine—notice of claims, lack of prejudice, and good faith.[50] As for the requirement that the Krauses pursued their initial relief in a judicial or quasi-judicial governmental forum, the Borough, the Christiansens, and individual defendants only argue that the Borough Manager is not a quasi-judicial governmental forum; they do not contest the BOAA's status as a quasi-judicial governmental forum. The Krauses pursued their appeal with the BOAA long before the statute of limitations expired on any of the claims in their amended complaint.[51] If the Krauses ultimately prove the

45. Matanuska–Susitna Borough Ordinance 15.39.140 creates a fifteen-day deadline for filing appeals of Platting Board decisions to the BOAA.

46. *Gudenau & Co., Inc. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987).

47. *Id.*

48. *Fred Meyer of Alaska v. Bailey*, 100 P.3d 881, 886 (Alaska 2004).

49. *See Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 885–86 (Alaska 2006) (Noting our equitable tolling cases have "uniformly" given plaintiffs second limitations period to file second claim, but declining to decide whether plaintiffs will always have second full limitations period for second claim); *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 887 (Alaska 2004) (plaintiff had full statutory period to file his second claim); *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1088 n. 6 (Alaska 1989) (employee entitled to benefit of full statutory period after circumstances which justified equitable tolling abated).

50. *Gudenau*, 736 P.2d at 768.

51. At most, one hundred four days passed between the Krauses' discovery of the recording of the plat (December 10 or 11, 2002) and their filing of an appeal with the BOAA (March 24, 2003). Twenty-six days passed between the date

elements of equitable tolling, then the statute of limitations was tolled during the pendency of their action before the BOAA and the claims in their amended superior court complaint are not time-barred.[52]

Because the doctrine of equitable tolling may toll the statute of limitations on the claims in the Krauses' amended complaint, it was an abuse of discretion to deny them leave to amend.

### b. The superior court did not rule on the Krauses' equitable estoppel argument.

The Krauses' motion for leave to amend their complaint also argued that the doctrine of equitable estoppel prevented the appellees from relying on the statute of limitations to dismiss their claims. They cite *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*,[53] in support of this argument.

In *Gudenau*, we affirmed the superior court's ruling that the plaintiff failed to satisfy the elements of equitable tolling.[54] But we also said that the court's inquiry does not end with that conclusion; a plaintiff who is aware of the elements of his or her cause of action, but fails to file suit within the limitations period, may still be protected if he or she was induced by defendant's words or conduct to postpone filing suit until the limitations period has expired.[55]

Here, the superior court's order did not address the Krauses' argument that misrepresentation(s) by the Borough should equitably estop it from relying on the statute of limitations. We are unable to assess the merits of this argument because it entails questions of fact.[56] The Krauses are entitled to an opportunity to prove this defense to the statute of limitations.

## V. CONCLUSION

We AFFIRM the dismissal of the Krauses' constitutional claims for damages but REVERSE the court's order dismissing the Krauses' constitutional claims for declaratory and injunctive relief. We also REVERSE the order denying the Krauses' motion for leave to amend their complaint and REMAND for further proceedings consistent with this opinion.

---

the BOAA issued its decision (April 1, 2005) and the date the Krauses filed their appeal to the superior court (April 27, 2005). Forty-four days passed between the date the superior court affirmed the BOAA's decision (March 12, 2007) and the date the Krauses filed their complaint in this case (April 25, 2007). The total of those periods is one hundred seventy-four days, far less than one year—the shortest statute of limitations period applicable to the claims the Krauses filed in superior court.

**52.** The fact that the Krauses' appeal of the Borough Manager's letter to the BOAA was ultimately unavailing is irrelevant. The applicability of the doctrine of equitable tolling does not depend on the outcome of the Krauses' appeal to the BOAA. *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 142–43 (Alaska 2008) (The applicability of the equitable tolling doctrine does not depend upon the successful pursuit of an alternative remedy; it is enough that an initial action be "unavailing" with respect to a certain form of relief). Whether the superior court dis-

missed the BOAA appeal on timeliness, jurisdictional, or other grounds, the Krauses may rely on equitable tolling if the record satisfies the elements of the doctrine. *Beegan*, 195 P.3d at 142–43; *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884–85 (Alaska 2006); *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 885–86 (Alaska 2004).

**53.** 736 P.2d 763 (Alaska 1987).

**54.** *Id.* at 768.

**55.** *Id.*

**56.** *Groseth v. Ness*, 421 P.2d 624, 632 n. 23 (Alaska 1966) ("To establish an equitable estoppel it is generally necessary that the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, and due to such reliance did not institute suit timely.").